T.C. Memo. 2007-157

UNITED STATES TAX COURT

GARY LEE COLVIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16557-04.                Filed June 19, 2007.

R disallowed a majority of P's claimed business
expense deductions for 2000, due to a lack of
substantiation, and determined a deficiency. R mailed
the notice of deficiency to four separate addresses.
Each notice was returned to R.

P claimed that he was a statutory employee
pursuant to sec. 3121(d), I.R.C., for 2000.

<u>Held</u>: The notice of deficiency is valid as
petitioner received actual notice of the deficiency
without prejudicial delay and filed timely a petition.

<u>Held</u>, <u>further</u>, P was not a statutory employee for
2000.

<u>Held</u>, <u>further</u>, The majority of R's deficiency
determinations are sustained. P failed to meet the
substantiation requirements of sec. 162, I.R.C., and
where applicable, sec. 274, I.R.C., for most of the
deductions, or portions thereof, that R disallowed.

Gary Lee Colvin, pro se.

Daniel N. Price, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition

for judicial review of a notice of deficiency that determined a

$13,018 deficiency for petitioner's 2000 taxable year.[1]  After

concessions by both parties,[2] the issues for decision are:

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

[2]Petitioner received a Form W-2, Wage and Tax Statement,
from Technology Integration Group (TIG) which reflected that he
received wages of $12,004 in 2000.  Petitioner also received a
W-2 from Daou Systems Inc. (Daou Systems) which reflected that he
received an $8,000 settlement in 2000.  Petitioner included the
$20,004 on line 1 of his 2000 Schedule C, Profit or Loss From
Business.  However, petitioner then took deductions that exactly
matched his income from TIG and Daou Systems.  Petitioner
deducted $12,004 and $8,000 on Part V, Other Expenses, of his
Schedule C.  Respondent disallowed the deductions.  Petitioner
did not address these issues at trial or offer any evidence
relating to them.  Accordingly, these deductions are deemed
conceded by petitioner.  See Rule 142 (burden of proof generally
on taxpayer); Rule 149(b) (party's failure to produce evidence,
in support of issue of fact as to which party has burden of
proof, may be ground for determination of issue against that
party).

Respondent conceded that petitioner is entitled to the
following Schedule C, line 17 deductions for his 2000 taxable
year:  (1) District Court appeal costs for Colvin v. O'Connor,
70 F.3d 530 (9th Cir. 1995), in the amount of $105; (2) Central
Valley Reporters transcripts costs in the amount of $197; and
(3) legal fees and costs for Colvin v. Daou Sys. Inc., No. 97-CV-
(continued...)

(1) Whether the notice of deficiency is valid;

(2) whether petitioner was a statutory employee of Technology Integration Group (TIG) for his 2000 taxable year;

(3) whether petitioner is entitled to a deduction of $5,253 for automobile expenses he incurred in 2000;

(4) whether petitioner is entitled to a deduction of $5,195 for loan interest that he allegedly paid to his mother in 2000;

(5) whether petitioner is entitled to a deduction of $1,750 for fees he allegedly paid to his mother for accounting, tax preparation, and representation services performed in 2000;

(6) whether petitioner is entitled to $659 for cost of goods sold in 2000;

(7) whether petitioner is entitled to a deduction for $1,689.65 in legal fees and costs incurred in 2000.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Round Rock, Texas.

---

[2](...continued) 00305 (S.D. Cal. filed Feb. 25, 1997), in the amount of $5,911.65. Petitioner conceded that if it is ultimately determined that the Tax Court has jurisdiction over the instant case, then $10,157 that petitioner claimed as attorney fees for Colvin v. Pennant Village Homeowners Association, No. 96-CV-01654 (S.D. Cal. filed Sept. 23, 1996), on Schedule A, Itemized Deductions, as a miscellaneous expense is a nondeductible personal expense.

During 2000, petitioner was a computer hardware salesperson for TIG. Petitioner signed a "formal offer of employment" on May 3, 2000, to indicate his acceptance of employment. An "Employment and Commission Agreement" (employment agreement) between TIG and petitioner was executed by petitioner on May 9, 2000.[3] Petitioner initialed the lower right corner of every page on a space entitled "Employee" and signed the last page of the agreement. The employment agreement provides in pertinent part:

1. <u>Employment</u>. Employer engages Employee to serve as an <u>Account Executive</u>, and Employee hereby accepts such an engagement upon the terms and conditions set forth herein.

2. <u>Term</u>. This Agreement is for an initial period of one (1) year but is terminable by either party, with or without cause, at any time with or without notice. This Agreement will continue to govern the employment relationship for additional one (1) year terms unless a new agreement is negotiated and executed.

3. <u>Duties</u>. Employee shall perform such duties as are customarily performed by an <u>Account Executive</u>, and such

---

[3]Petitioner, in the joint stipulation, objected to the admission into evidence of Exhibit 26-R, the unemployment agreement and related employment documents, from TIG on the grounds of: (1) Lack of foundation; (2) hearsay; (3) Fed. R. Evid. 106; (4) petitioner lacks personal knowledge of their creation; and (5) respondent has failed to identify the individual who allegedly created the documents. Respondent obtained the documents from TIG pursuant to a subpoena duces tecum.

The Court concludes that Exhibit 26-R does not lack foundation. The documents are business records, some bear petitioner's signature or initials, and are admissible. The Court concludes that the documents are complete. Petitioner's remaining arguments are meritless. Accordingly, Exhibit 26-R is admissible.

other duties as the President of Employer ("President") may require from time to time, with the understanding that: (i) Employee will devote his/her utmost knowledge and best skill to the performance of his/her duties; (ii) Employee will devote his/her full business time to the rendition of such services; and (iii) Employee will not engage in any other gainful occupation which requires his/her personal attention without prior consent of the President.

4.   At-Will Employment. Employee and Employer understand and expressly agree that Employee's employment may be terminated by Employer or by Employee at any time, with or without notice and with or without cause.  Employee and Employer expressly agree that this provision is intended by Employee and by Employer to be the complete and final expression of their understanding regarding the terms and conditions under which Employee's employment may be terminated. Employee and Employer further understand and agree that no representation contrary to this provision is valid, and that this provision may not be augmented, contradicted or modified in any way, except by a writing signed by Employee and by the President.

*      *      *      *      *      *      *

12.   Personnel Policies and Procedures. The Employer shall have the authority to establish from time to time personnel policies and procedures to be followed by its employees.  Employee agrees to comply with the policies and procedures of the Employer.  To the extent any provisions in Employer's personnel policies and procedures differ with the terms of this Agreement, the terms of this Agreement shall apply.  In no case shall any personnel policies or procedures be deemed to contradict the at-will employment provision contained in paragraph 4 of this Agreement.

13.   Commission Plan. Employee is employed by Employer to engage in the sale of computer-related equipment and computer service contracts.  Employee will not engage in the actual provision of technical services under the service contracts that Employee will sell.  Employee will be paid on a commission basis pursuant to the following commission plan:

13.1     Draw. During the first four months (4) of employment under this Agreement, Employee will receive a non-recoverable draw on commission in the amount of $5,000 per month ("Draw").  In months five (5) and six (6), Employee will receive a non-recoverable monthly draw of $2,500.  Subsequent to the 6th month, draw will be recoverable month to month, which amount shall be paid in biweekly installments during the course of Employer's regular payroll periods.

13.2     Draw Record. Employer shall maintain a record of all Draws taken by Employee for the purposes of recouping Draws from commissions as they are earned by Employee ("Draw Record");

13.3     Monthly Gross Income Calculations. At or around the 15th day of each month, Employer shall determine the amount of gross profit on paid invoices generated from Employee's sales in the previous calendar month.  Employee will be allocated a commission amount equal to 25% of such gross profit amount ("Gross Commission").

13.4     Recoupment of Draws. After Employer determines Employee's Gross Commission, Employer shall deduct from such Gross Commission all amounts due and owing to the Employer for Draws taken by Employee.

13.4.1.   Net Commission. Any balance remaining after the deduction of the Draws and other applicable payroll deductions from the Gross Commission, shall be paid to Employee at the commission payroll period ("Net Commission").

13.4.2.   Draws Exceeding Gross Commission. If Employee's Draws as reflected in the Draw Record exceed Employee's Gross Commission, Employee agrees that Employer shall be entitled to deduct as much of the amount due in Draws from the Gross Commission as possible.  In addition, Employee agrees that any balance remaining in Employee's Draw Record will be carried over into subsequent months until Employee's Gross Commission has satisfied such balance.

*     *     *     *     *     *     *

15. <u>Unauthorized Expenses</u>. Employees will not be entitled to reimbursement for expenses that are not previously authorized in writing by the President of Employer.[4]

16. <u>Fringe Benefits</u>.

16.1    <u>Health Insurance</u>. The Employer shall provide health insurance pursuant to the existing company health insurance plan.

17. <u>Automobile</u>. Employee shall, at his/her own expense, procure an automobile for any use in traveling and making calls on clients and prospective clients. Employee agrees to indemnify and hold Employer harmless from any claims arising out of or relating in any way to the operation or use of that automobile by Employee. Furthermore, Employee shall at all times during the term of his/her employment keep in full force and effect, at his/her sole expense, a policy of automobile insurance on each automobile used by him/her at any time to carry out any of the duties of his/her employment.  [Reproduced literally.]

Petitioner did not enroll in TIG's medical plan. Petitioner, his girlfriend, Kathleen Santoni (Ms. Santoni), and their two minor children were covered by Ms. Santoni's Costco medical insurance.  Petitioner did not participate in TIG's section 401(k) plan.

Petitioner listed his address on his 2000 Form 1040, U.S. Individual Income Tax Return, as "6064 Erlanger Street, San Diego, CA 92122" (San Diego address).[5]  On his 2000 Form 1040

---

[4]A handwritten notation to this provision added "A VICE PRESIDENT OR THE" before "President".

[5]Petitioner, in the joint stipulation, objected to the admission into evidence of his 2000 Federal income tax return because of the "non-redaction of his and third parties' social

(continued...)

Schedule C, Profit or Loss From Business, petitioner listed "Consultant" as his principal business or profession, and "Colvin Business Services II" as the name of his business. Petitioner reported his gross receipts or sales as $20,004 and did not check the box on line 1 of his Schedule C to indicate that the income was reported on a Form W-2, Wage and Tax Statement, that had the statutory employee box checked. On petitioner's 2000 Form W-2, TIG did not check the box on line 15 to indicate that petitioner was a statutory employee. Petitioner claimed a total of $52,968 in expenses and costs of goods sold.[6] Petitioner's Schedule C indicated a net loss of $32,964.

Petitioner owned two vehicles, a 1997 Volkswagen Cabriolet and a 1997 Honda Accord. He claimed a car and truck expense of $6,033 on Schedule C of his 2000 Form 1040. On Schedule C Part

---

[5](...continued)
security numbers, as well as the full names of his minor children, and phone numbers." Petitioner also objected to the admission into evidence of his 1997, 2001, 2002, and 2003, Federal income tax returns on the same grounds, and relevancy. Although the Court, on January 16, 2007, proposed amendments to its Rules of Practice and Procedure that would provide in Rule 22.2 for the redaction of Social Security numbers and minor children's names, the proposed amendments have not yet been adopted. Further, petitioner has not filed a motion to redact the Social Security numbers and minor children's names, or to seal that portion of the record. The Court concludes that petitioner's 1997, 2000, 2001, 2002, and 2003, Federal income tax returns are admissible in their current form.

[6]Petitioner's total expenses of $52,968 consisted of $46,454 in general expenses, $3,323 in cost of goods sold, and $3,191 for business use of his home.

IV, Information on Your Vehicle, petitioner did not complete the section and indicated "SEE STMT". Petitioner attached a Schedule C "Multiple Auto Statement". Under the heading "Vehicle 1", petitioner listed business miles of 14,200. Under the heading "Vehicle 2", petitioner listed business miles of 4,000.

For 2000, petitioner claimed a Schedule C interest deduction on a loan he entered into with his mother, Rhoda Colvin, in the amount of $5,195. Respondent disallowed the entire deduction. Petitioner presented as substantiation a photocopy of the front of a check issued to his mother in the amount of $5,000. A handwritten notation on the memo line of the check indicated that the check was for "Loan Repayment". Other handwritten notations on the top of the check were "Loan Pay & Int 4575", "Mar Mtg 425.00", and "also Honda Ref $300 toward GLC Loan of $35,000".

Petitioner also claimed as a Schedule C deduction $1,750 in fees he allegedly paid to his mother for accounting services, tax preparation, and representation. Petitioner's 1997, 2000, and 2003, Federal tax returns indicate that they were prepared by his mother. Petitioner presented as substantiation an invoice in the amount of $500 from Colvin Business Services, a business conducted by petitioner's mother, to Colvin Business Services II, petitioner's business. The invoice, dated April 30, 2000, reflects that petitioner paid the invoice with check No. 6718 on June 5, 2000. Petitioner's original bank statements were

apparently lost somehow by either petitioner or respondent during the tax examination. In lieu of these, petitioner presented a self-created computerized "Register Report" which petitioner testified "is a check register". Notably, however, the Register Report does not reflect check No. 6718's ever clearing petitioner's bank account. The Court asked petitioner whether the Register Report included "all your checks?" Petitioner's answer was "Yes, sir. Anything hitting my bank account" during the 2000 taxable year. Checks numbered 6717 and 6719 are shown in the Register Report as cleared on June 12 and June 16, 2002, respectively, but check No. 6718 is never mentioned.

In addition, petitioner claimed a Schedule C deduction for legal fees and costs in the amount of $7,903. The parties stipulated, as to that item, that the only issue still in contention is petitioner's legal fees of $1,689.65 for the case Smyth v. Daou Sys., Inc, No. 97-CV-02013 (S.D. Cal. filed Nov. 7, 1997).[7] Petitioner presented as substantiation a document specifying the amount of the award he received, a Form W-2 characterizing the settlement as a bonus, the accompanying check from Daou Systems for $5,918.82 ($8,000 less withholding taxes of $2,081.18) payable to his attorney Michael Conger (Mr. Conger),

---

[7]Petitioner was employed by Daou Systems as a Senior Network Systems Engineer / Project Manager from Aug. 1995 to Mar. 1997. Petitioner conceded that he was not a statutory employee.

as well as his attorney's statement detailing the expenses and fees incurred, and some court documents.

Petitioner claimed on Schedule C $3,323 for cost of goods sold (CGS). The notice of deficiency disallowed $659 of petitioner's claimed CGS. Petitioner's CGS consisted of $2,833 of computer hardware and $490.39 of computer software. Petitioner provided substantiation for $58.80 in computer software receipts and was allowed a software CGS for that amount. Petitioner's Register Report listed computer hardware items and the dates they were purchased, which respondent considered when he allowed $2,605 of petitioner's claimed hardware items CGS. Respondent disallowed the balance of the claimed CGS for lack of substantiation and because the items were allegedly used as capital assets and not inventory.[8]

On his 1997 Form 1040, petitioner used his San Diego address. On his 2001 and 2002 Forms 1040, petitioner listed "2330 Candle Ridge Trail, Georgetown, TX 78626" (Georgetown, Texas, address) as his address.

Form 872, Consent to Extend the Time to Assess Tax, for petitioner's 2000 taxable year was signed by petitioner on

_____

[8]The cursory revenue agent's report does not clearly identify which hardware items were disallowed. Based on the total dollar amount disallowed of $228 ($659 total CGS disallowance minus $431 software disallowance), it appears the items were: (1) "16MB FLASH" for $70; (2) floppy drive for $65; (3) "RAM, zipdrive" for $23; and (4) a 56K modem for $70.

February 15, 2004, and by respondent on March 29, 2004.  On the designated space for the taxpayer's address on Form 872, petitioner's Georgetown, Texas, address is typed.  However, on one of the copies of this form, which was produced by respondent from his records in digital CD format, there is a photocopy of a post-it note in the middle with the handwritten notation "1752 W. Muirwood DR, Phoenix, AZ 85045, new address" (Muirwood, Phoenix address).  It is not clear from the record when the handwritten notation was added.  Respondent concedes that the record does not indicate how the Internal Revenue Service (IRS) was informed of the new address.

On August 20, 2004, respondent received petitioner's Form 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return, for taxable year 2003 that had listed as his address "1111 South Creek Drive, #831, Round Rock, TX 78664" (Round Rock, Texas, address).  Petitioner also listed the Round Rock, Texas, address as his address on his earlier filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, and on his 2003 Form 1040, which was mailed on October 15, 2004, and received by respondent on October 22, 2004.

Previously, respondent had issued a notice of deficiency on June 10, 2004, for petitioner's 2000 taxable year showing a deficiency of $13,018.  The record reflects that the notice of

deficiency was sent to four separate addresses.  One notice of deficiency was addressed to "Gary L. Colvin, 1752 West Muirwood Drive, Phoenix, AZ, 85045-1741".[9]  A second similar notice was addressed to "Gary L. Colvin, Unit #831, 1111 South Creek Drive, Round Rock, TX, 78664-0000".[10]  A third notice of deficiency was addressed to "Gary L. Colvin, 2330 Candle Ridge Trail, Georgetown, TX 78626-0000".[11]  A fourth notice of deficiency was addressed to "Gary L. Colvin, 6064 Erlanger Street, San Diego, CA 92122-0000".[12]  All four copies of the notice of deficiency were returned to the IRS as unclaimed.

---

[9]The certified envelope containing that notice of deficiency had notations reflecting that the U.S. Postal Service attempted to deliver the notice to petitioner on June 12, June 17, and had returned the undelivered envelope to the IRS on June 27, 2004. The envelope also bore stamps of "UNCLAIMED", "INTERNAL REVENUE SERVICE RECEIVED JUL 06 2004", and "90 DAY UNIT LAGUNA NIGUEL".

[10]The certified envelope containing that notice of deficiency had a line through the address and bore stamps providing "INTERNAL REVENUE SERVICE RECEIVED JUL 21 2004", and "90 DAY UNIT LAGUNA NIGUEL".

[11]The certified envelope containing that notice of deficiency had a line through the address, notations reflecting that the U.S. Postal Service attempted to deliver for a second time the notice to petitioner on July 23, 2004.  The undeliverable envelope was returned to the IRS on July 30, 2004, and bore stamps providing "INTERNAL REVENUE SERVICE RECEIVED AUG 09 2004", and "90 DAY UNIT LAGUNA NIGUEL".

[12]The certified envelope containing this notice of deficiency had a handwritten notation of "2nd Return 6-17", reflecting that the U.S. Postal Service attempted to deliver the notice to petitioner on at least one occasion, and bore stamps of "RETURNED TO SENDER" with "ATTEMPTED NOT KNOWN" checked, "INTERNAL REVENUE SERVICE RECEIVED JUN 23 2004", and "90 DAY UNIT LAGUNA NIGUEL".

Petitioner's request for a copy of the notice of deficiency from the IRS was received by the Taxpayer Advocate Service (TAS) on July 23, 2004. A copy of the notice of deficiency was provided by the TAS in Laguna Niguel, California, and was attached to a letter to petitioner dated July 28, 2004. The letter was addressed to petitioner's Round Rock, Texas, address. Petitioner petitioned timely this Court on September 8, 2004. Petitioner stated on the petition his requests for relief and his supporting reasons as follows:

> Deductions taken for employee mileage allowable as a Schedule A deduction; deductions taken for business mileage allowable as a Schedule C deduction; legal fees and costs are allowable as a deductible [sic] under I.R.C. Sections 212(1), 212(3), 216 and 262. Further, Commissioner acted in violation of multiple sections of Title 26 USC as well as its own I.R.C. when it deliberately failed to complete its audit of petitioner's tax return; deliberately failed to consider any of the documents petitioner timely submitted to substantiate his personal, employee and business deductions; deliberately sent audit correspondence to an address it knew was improper so as to prevent petitioner from exercising his right to an administrative appeal hearing; deliberately sent the statutory 90-day notice to an address it knew it was improper thereby denying petitioner proper notice of the alleged deficiency; and falsified documents to make it appear notice was proper.

OPINION

I. Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See

Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue". The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Internal Revenue Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2). In the instant case, petitioner failed to comply with substantiation requirements and did not present credible evidence at trial. Petitioner's original bank statements were apparently lost during the tax examination. However, petitioner's lack of substantiation and failure to present credible evidence were pervasive. Accordingly, the burden of proof remains on petitioner.

## II. <u>Mailing of Notice of Deficiency</u>

Petitioner argues that this Court lacks jurisdiction. The two requirements for this Court's jurisdiction in a deficiency case are a valid notice of deficiency issued by the Commissioner and a timely filed petition by the taxpayer. <u>Frieling v. Commissioner</u>, 81 T.C. 42, 46 (1983). Because petitioner filed his petition on time, the only jurisdictional issue is the validity of the notice of deficiency.

The purpose of the mailing under section 6212 is to provide the taxpayer with notice that a deficiency has been determined against him or her, and to provide the taxpayer with an opportunity to petition this Court to challenge the Commissioner's determination.[13] Id. at 53.  When a taxpayer receives actual notice of a deficiency and does not suffer prejudicial delay in filing timely a petition with this Court, the notice of deficiency, even though incorrectly addressed, is valid under section 6212(a).[14]  Estate of Greenwood v.

---

[13]Petitioner contends that Jones v. Flowers, 547 U.S. 220 (2006) "ruled that the government could not rely solely on an unclaimed certified letter for properly notifying a taxpayer of claimed tax liabilities."  Petitioner's contention is mistaken and Jones v. Flowers, supra, is not applicable to petitioner's case.  Jones v. Flowers, supra, held that according to the Fourteenth Amendment Due Process Clause, the State of Arkansas should have taken additional reasonable steps to notify the petitioner of a tax sale of his house after a certified letter was returned unclaimed.  Notably, Mr. Jones did not learn of the tax sale until after the sale had occurred; whereas in the instant case petitioner obtained a copy of the notice of deficiency before the expiration of the 90-day filing period and filed a timely petition.

[14]Petitioner alleges that the notice of deficiency sent to his Round Rock, Texas, address was addressed erroneously.  Petitioner alleges that because respondent placed "Unit 831" before "1111 South Creek Drive" in addressing the notice of deficiency, this "caused the US Postal Service to process the letter as one destined to be delivered to a private mailbox or 'PMB' contained within a commercial facility such as a MAILBOXES ETC., POSTNET, POSTAL ANNEX, and PAKMAIL; not the apartment Petitioner resided at".  [Reproduced literally.]  Petitioner asserts that as a result of the misaddressing by respondent, the notice of deficiency was returned to respondent.

Petitioner also asserts that respondent committed criminal
(continued...)

<u>Commissioner</u>, T.C. Memo. 2003-98 (citing <u>St. Joseph Lease Capital Corp. v. Commissioner</u>, 235 F.3d 886, 891-892 (4th Cir. 2000), affg. T.C. Memo. 1996-256; <u>Estate of Biskis v. Commissioner</u>, T.C. Memo. 2001-94; <u>Estate of Citrino v. Commissioner</u>, T.C. Memo. 1987-565).  Petitioner had actual notice of the deficiency as he requested, and received, a copy of the notice of deficiency from the IRS TAS.  Petitioner filed a petition that was timely and, therefore, did not suffer prejudicial delay.  Accordingly, the Court concludes that the notice of deficiency is valid, and this Court has jurisdiction.

III. <u>Statutory Employee</u>

A. <u>General Rules</u>

A statutory employee may properly reflect business income and expenses in full on Schedule C of Form 1040, and thereby avoid the Schedule A, Itemized Deductions, limitations on the deduction of employee business expenses and the phaseout of

---

[14](...continued)
obstruction of justice by intentionally misaddressing the notice of deficiency sent to the Round Rock, Texas, address.  The Court concludes that these allegations are unfounded, frivolous, and meritless.  If anything, the evidence indicates that respondent, by sending four differently addressed notices of deficiency, was very interested in ensuring that petitioner received the notice of deficiency.

Additionally, petitioner alleges that he did not receive a complete copy of the notice of deficiency until 9 months after filing his petition.  However, petitioner attached a complete copy of the notice of deficiency to his filed petition.

itemized deductions.[15]  See <u>Prouty v. Commissioner</u>, T.C. Memo. 2002-175 (citing Rev. Rul. 90-93, 1990-2 C.B. 33).  An individual qualifies as a statutory employee pursuant to section 3121(d)(3) only if such individual is not a common law employee pursuant to section 3121(d)(2).  <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. 263, 269 (2001).  Section 3121(d) defines employee, in pertinent part, as follows:

> (1) any officer of a corporation; or
>
> (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee; or
>
> (3) any individual (other than an individual who is an employee under paragraph (1) or (2)) who performs services for remuneration for any person--
>
> \*     \*     \*     \*     \*     \*     \*
>
> (D) as a traveling or city salesman, other than as an agent-driver or commission-driver, engaged upon a full-time basis in the solicitation on behalf of, and the transmission to, his principal (except for side-line sales activities on behalf of some other person) of orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar establishments for merchandise for resale or supplies for use in their business operations;

---

[15]Generally, an employee may deduct unreimbursed employment expenses on Schedule A subject to an overall 2-percent of adjusted gross income limitation.  See secs. 62(a), 67(a).  A statutory employee is not an employee for purposes of sec. 62.  See sec. 3121(d); <u>Prouty v. Commissioner</u>, T.C. Memo. 2002-175.  As the Court concludes, <u>infra</u>, that petitioner is not a statutory employee, petitioner's expenses are subject to this overall 2-percent of adjusted gross income limitation.

if the contract of service contemplates that substantially all of such services are to be performed personally by such individual; except that an individual shall not be included in the term "employee" under the provisions of this paragraph if such individual has a substantial investment in facilities used in connection with the performance of such services (other than in facilities for transportation), or if the services are in the nature of a single transaction not part of a continuing relationship with the person for whom the services are performed * * *

As an individual qualifies as a statutory employee only if the individual is not a common law employee, the Court will initially determine whether petitioner was a common law employee of TIG.

B. <u>Common Law Employee</u>

Whether an individual is an independent contractor or common law employee is a question of fact. <u>Weber v. Commissioner</u>, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995). In the Fifth Circuit, to which this case would normally be appealable, doubtful questions should be resolved in favor of employment. <u>Breaux & Daigle, Inc. v. United States</u>, 900 F.2d 49, 52 (5th Cir. 1990). Generally, petitioner has the burden of proving error in respondent's notice of deficiency determination that he was a common law employee. See Rule 142(a); <u>Profl. & Executive Leasing, Inc. v. Commissioner</u>, 89 T.C. 225, 231 (1987), affd. 862 F.2d 751 (9th Cir. 1988). However, respondent conceded on brief

that he bears the burden of proof on the statutory employee issue because it constitutes a new matter under Rule 142.[16]

In determining whether a worker is a common law employee or an independent contractor, the Court generally considers: (1) The degree of control exercised by the principal; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; (7) the relationship the parties believed they were creating; and (8) the provision of employee benefits.  See Ewens & Miller, Inc. v. Commissioner, supra at 270; Weber v. Commissioner, supra at 387; Profl. & Executive Leasing, Inc. v. Commissioner, supra at 232; Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975); Cole v. Commissioner, T.C. Memo. 2006-44.  All of the facts and circumstances of each case are considered, and no single factor is dispositive.  Ewens & Miller, Inc. v. Commissioner, supra at 270.

### 1. Degree of Control

The right of the principal to exercise control over the agent, whether or not the principal does so, is the "crucial

---

[16]Respondent conceded that he bears the burden of proof pursuant to Rule 142 because "The issue of Petitioner's status as a statutory employee of TIG is a new matter since the Notice of Deficiency frames the issue of Petitioner's Schedule C expenses from the perspective of substantiation."

test" for the employer-employee relationship. Weber v. Commissioner, supra at 387. "The employment relationship exists when the principal retains the right to direct the manner in which the work is done, and to control the methods used in doing the work, and to control the details and means by which the desired result is accomplished." Ellison v. Commissioner, 55 T.C. 142, 152-153 (1970). In order to obtain the requisite degree of control, "the alleged employer need not 'stand over the employee and direct every move that he makes.'" Simpson v. Commissioner, supra at 985 (citing Atl. Coast Life Ins. Col. v. United States, 76 F. Supp. 627, 630 (E.D.S.C. 1948). In fact, the employer need not set the employee's hours. Workers who set their own hours are not necessarily independent contractors. Ewens & Miller, Inc. v. Commissioner, supra at 270.

In his argument that petitioner was a common law employee, respondent relies predominately on the employment agreement and the TIG Employee Handbook Manual (employee manual). Respondent contends that TIG controlled the details of petitioner's work because the employment agreement provides that the "Employee shall perform such duties as are customarily performed by an Account Executive, and such other duties as the President of Employer * * * may require from time to time". Respondent then asserts, based on the employee manual, that "Such duties include TIG's requirement that Petitioner attend weekly meetings. TIG

prescribed appropriate dress for Petitioner.  TIG specified how its telephones, software, and company vehicles were to be used." Respondent also presented as evidence a "WRITTEN WARNING NOTICE" from Mr. Rasmussen, petitioner's supervisor, that reprimanded petitioner for argumentative comments made during a "lunch-n-learn" session with a vendor of TIG.

Petitioner contends that he set his own work hours and sales territory, defined the manner in which he performed his tasks, worked principally from home, and was not required to utilize TIG's support staff or attend routine meetings.  Other than his own testimony, petitioner did not provide any substantiation of these facts.

The Court concludes that respondent has met his burden of proof as to the degree of control that TIG exercised over petitioner.  The documentary evidence that respondent presented indicates that TIG had the right to control, whether or not exercised, how petitioner performed his work.  This is particularly exemplified by the "WRITTEN WARNING NOTICE" issued by Mr. Rasmussen and the employment history it recites. Accordingly, this "crucial" factor weighs in favor of employee status.

### 2. Investment in Facilities

The fact that a worker provides his or her own tools, or owns a vehicle that is utilized for work, is indicative of

independent contractor status.  Id. at 271 (citing Breaux &
Daigle, Inc. v. United States, 900 F.2d at 53).  Additionally,
maintenance of a home office is consistent with independent
contractor status, although alone it does not constitute
sufficient basis for a finding of independent contractor status.
Lewis v. Commissioner, T.C. Memo. 1993-635.

Petitioner owned two vehicles and claimed he utilized both
for work purposes for 2000, although the extent of such use is
disputed.  The employment agreement provided that petitioner was
to maintain motor vehicle insurance at all times and that all
other related expenses were his responsibility.  The record
reflects that petitioner worked at least part-time from home.
Petitioner claimed as a Schedule C deduction $3,191 for business
use of his home, which respondent allowed.  Accordingly, the
Court concludes that this factor tends to weigh in favor of
independent contractor status.

3. Opportunity for Profit or Loss

Compensation on a commission basis is entirely consistent
with an employer-employee relationship.  Tex. Carbonate Co. v.
Phinney, 307 F.2d 289, 292 (5th Cir. 1962); Capital Life & Health
Ins. Co. v. Bowers, 186 F.2d 943, 944-945 (4th Cir. 1951).  While
petitioner could have conceivably suffered some loss as a result
of his sales activity for TIG, he may still be an employee under
the common law test if his risk of loss was negligible.  See

Lewis v. Commissioner, supra.  Petitioner worked for TIG for approximately 6 months in 2000.  Petitioner was paid a nonrecoverable draw in the amount of $5,000 for the first 4 months, and then $2,500 for the fifth and sixth months.  Thereafter, petitioner's draw was recoverable against his sales commission on a month-to-month basis.  In 2000, petitioner was entitled to a nonrecoverable draw for the entire period he worked; therefore, petitioner's risk of loss was negligible, if not nil.  The Court concludes that this factor weighs in favor of an employer-employee relationship.

### 4. Right To Discharge

Employers typically have the power to terminate employees at will.  Ellison v. Commissioner, supra at 155.  The employment agreement provided that TIG could terminate petitioner at will with or without cause or notice.  Notably, TIG exercised its termination right.  Accordingly, the Court concludes that this factor weighs in favor of an employer-employee relationship.

### 5. Integral Part of Business

Petitioner contends that he was not an integral part of TIG's business.  Petitioner claims that TIG was a "diverse company with separate divisions that sold" the following: (1) Services, (2) computer hardware, (3) office furnishings, (4) office supplies, (5) outside help-desk functions, and (6) "Application Service Processing".  Petitioner further asserts

that TIG performed computer training and installed networking cable and telephone systems. As a result, petitioner argues that he "was not a key connection with customers, only one of many resources available to them", and was therefore not an integral part of TIG's business. However, the fact that TIG had several separate divisions does not affect the analysis of whether petitioner's services were integral to TIG. Petitioner's services could have been integral to the division in which he worked, which would indicate that petitioner was an employee. See Ewens & Miller, Inc., v. Commissioner, 117 T.C. at 272-273.

Respondent was silent on the issue. The Court concludes that this factor is neutral and indicates neither independent contractor status nor employee status.

### 6. Permanency of the Relationship

A transitory work relationship may weigh in favor of independent contractor status. Ewens & Miller, Inc. v. Commissioner, supra at 273 (citing Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 305 (5th Cir. 1998)). The principal's right to discharge the worker, and the worker's right to quit, at any time, is an important factor. Id. Petitioner's position at TIG was for renewable 1-year terms. It was also at will and terminable by either party at any time, with or without cause or notice, and petitioner was in fact terminated. The Court concludes that petitioner's position was

transitory as he worked for TIG for less than 13 months.[17] Accordingly, this factor weighs in favor of independent contractor status.

### 7. Relationship the Parties Thought They Created

The offer and employment agreement refer to workers, such as petitioner, as employees, and to TIG as the employer. Notably, TIG did not check the box on line 15 of petitioner's 2000 Form W-2 indicating that he was a statutory employee. It is evident that for taxable year 2000 TIG thought of petitioner as an employee based on the employment agreement, and that TIG treated petitioner as a common law employee based on Forms W-2 and W-4, Employee's Withholding Allowance Certificate.[18] Thus, the Court concludes that petitioner and TIG intended to create an employer-employee relationship.

### 8. Provision of Employee Benefits

The offer and employment agreement provide that TIG employees are eligible to participate in a health insurance plan

_____

[17]Petitioner was terminated on May 29, 2001.

[18]Respondent argued on brief that TIG had not checked petitioner's Form W-2 for 2001 indicating that he was a statutory employee. In fact, the TIG Form W-2 for 2001 that is attached to petitioner's stipulated Federal tax return does bear an "X" in the block on line 13 indicating that for 2001 TIG's Form W-2 treated petitioner as a statutory employee. Inexplicably, the copy of the TIG Form W-2 for 2001 attached to Exhibit 26-R, which was also stipulated, seems identical to the copy of this form attached to petitioner's 2001 Federal tax return, but does not contain the "X" in the block on line 13 indicating a statutory employee.

and a section 401(k) plan.  These are benefits that are typically provided to employees rather than independent contracts.  See Weber v. Commissioner, 103 T.C. at 393-394.  Although petitioner did not participate in TIG's health insurance plan because he was covered by his girlfriend's health insurance, and did not participate in TIG's section 401(k) plan, the benefits were available to him if needed.  See id.  Accordingly, this factor tends to weigh in favor of employee status.

### 9. Conclusion

The relationship between petitioner and TIG had aspects that were characteristic of an employer and employee relationship and others characteristic of a principal and independent contractor relationship.  After weighing the above factors, the Court concludes that petitioner was a common law employee of TIG for the 2000 taxable year.

Petitioner was a common law employee of Daou Systems during his employment from August 1995 to March 1997.  As a result, the settlement he received from Daou Systems in 2000 is related to his common law employment.  Petitioner claims to have conducted a computer assembly and consulting business, Computer Consulting Forum Company, in 2000.  As discussed infra, petitioner's lack of gross sales, as well as lack of substantiation, leads the Court to conclude otherwise.

C. Statutory Employee

As the Court has concluded that petitioner was a common law employee of TIG for taxable year 2000, petitioner is precluded from being a statutory employee pursuant to section 3121(d)(3). Accordingly, petitioner is not entitled to deduct expenses on Schedule C.

IV. Petitioner's Deductions

In light of the Court's conclusion that petitioner is not entitled to deduct expenses on Schedule C, the Court must now decide whether petitioner is entitled to deduct expenses incurred in connection with his employment on Schedule A. See sec. 67(a).

A. Schedule A Deductions

An individual performing services as an employee may deduct miscellaneous itemized deductions incurred in the performance of services as an employee only to the extent such expenses exceed 2 percent of the individual's adjusted gross income. Sec. 67(a).

B. General Deduction Rules

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed

deductions, credits, and expenses in controversy. See Sec. 6001; Rule 142(a).

Pursuant to section 162(a), a taxpayer is entitled to deduct all of the ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. The deduction for an employed individual's unreimbursed business expenses under section 162 is claimed on Form 2106, Employee Business Expenses, and included in the miscellaneous itemized deductions taken on Form 1040 Schedule A. Expenses incurred in the performance of services as an employee are to be reported and memorialized as required by the regulations promulgated under section 162. See sec. 1.162-17(a), Income Tax Regs. The taxpayer bears the burden of proving that the claimed expenses were ordinary and necessary according to section 162. The employee must show the relationship between the expenditures and the employment. See Evans v. Commissioner, T.C. Memo. 1974-267, affd. in part, revd. in part 557 F.2d 1095 (5th Cir. 1977). In certain instances, the taxpayer must meet specific substantiation requirements in addition to the requirements of section 162. See sec. 274.

Generally, a claimed expense (other than those subjected to heightened scrutiny under section 274) may be deductible even where the taxpayer is unable to fully substantiate it, if there is an evidentiary basis for doing so. Cohan v. Commissioner, 39

F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985); <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In these instances, the Court is permitted to make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. <u>Cohan v. Commissioner</u>, <u>supra</u>.

C. <u>Automobile Mileage</u>

Pursuant to section 162, expenses relating to the use of an automobile that a taxpayer pays or incurs while commuting between the taxpayer's residence and the taxpayer's place of business or employment are not deductible because such expenses are personal, and not business, expenses. Sec. 1.162-2(e), Income Tax Regs. Automobile mileage deductions are also subject to the strict substantiation requirements of section 274(d). Where petitioner shows that his automobile expenses satisfy the requirements of section 162, but fails to establish that his records satisfy the heightened substantiation requirements of section 274(d), the expenses will not be allowable.

Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; or (3) the use of "listed property", as defined in section 280F(d), including personal

computers and passenger automobiles.  To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony:  (1) The amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case of entertainment, (4) the business relationship to the taxpayer of each expenditure or use.  Sec. 274(d)(4).

To satisfy the adequate records requirement of section 274, a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction of the elements of the expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

In lieu of substantiating the actual amount of any expenditure relating to the business use of a passenger automobile, a taxpayer may use a standard mileage rate as established by the IRS.  See sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage rate is to be multiplied by the number of

business miles traveled.  The use of the standard mileage rate establishes only the amount deemed expended with respect to the business use of a passenger automobile.  Id.  The taxpayer must still establish the amount (i.e., business mileage), the time, and the business purpose of each use.  Id.

Petitioner claimed a car and truck deduction of $6,033 on his 2000 Schedule C.  Respondent allowed only $780 of the claimed deduction.  At trial, petitioner produced little additional documentation.  Petitioner was unable to identify which of his two vehicles, the Volkswagen or the Honda, was "Vehicle 1" on his Schedule C.  Petitioner explained that he arrived at his total mileage figure of 18,200 by estimation based on his fuel expenditures for taxable year 2000, divided by the average miles per gallon for his two vehicles.[19]  Petitioner has failed to meet

---

[19]Petitioner claims that he spent $1,661.47 on gasoline (87 octane) in 2000.  Petitioner determined, from unspecified public records, the average price of gasoline in California for 2000 to be between $1.30 and $1.60 per gallon.  Petitioner then determined that the average miles per gallon, combining street and highway, for his two cars was between 30 and 32 miles.  Petitioner took his total gas expense, divided it by the average cost of gas per gallon, and then multiplied it by the average miles per gallon of his two cars, which came to approximately 32,000 miles traveled. Petitioner then testified that he assigned approximately 12,000 miles to personal use, and approximately 18,000 to business-related use.

Petitioner was required to use a standard mileage rate established by the IRS in lieu of establishing the actual amount of his expenditure.  See sec. 1.274-5(j)(2), Income Tax Regs. The business standard mileage rate for the 2000 taxable year was 32.5 cents per mile.  Rev. Proc. 99-38, 1999-2 C.B. 525.

(continued...)

the substantiation requirements of section 274 to establish his automobile mileage.  Accordingly, petitioner is allowed a miscellaneous itemized Schedule A deduction in the amount of $780, subject to the overall 2-percent of adjusted gross income limitation.

### D. Loan Interest

Pursuant to section 163(a), interest is deductible. However, personal interest generally is not deductible. Sec. 163(h).  Debt arrangements between family members are subject to a high level of scrutiny.  Zohoury v. Commissioner, T.C. Memo. 1983-597.  The following factors are used to scrutinize intrafamily loans: (1) Whether a specific rate of interest is charged to the taxpayer for the use of the money; (2) whether there is a specific date for repayment; (3) whether there is a written instrument evidencing the debt; (4) whether there is a legitimate purpose for obtaining the loan; (5) whether the taxpayer intended to repay the debt; (6) whether the relative receiving the payments on the loan was impecunious; and (7) whether the loan has economic substance.  Id.

---

[19](...continued)
Petitioner's 18,200 claimed business miles multiplied by the business standard mileage rate of 32.5 cents totals $5,915.  See id. secs. 5.01 and 5.02, 1999-2 C.B. at 526-527.  The Court concludes that petitioner's calculations do not comply with Rev. Proc. 99-38, 1999-2 C.B. 525.

Petitioner claimed $5,195 in interest expenses on his Schedule C for 2000. Respondent disallowed the entire deduction. Petitioner's only substantiation was a copy of a check he had issued to his mother in the amount of $5,000. Notations on the check indicate that the $5,000 was to be put towards numerous uses, including loan payment and interest in the amount of $4,575, petitioner's March 2000 mortgage in the amount of $425, and a car loan in the amount of $300. At trial, petitioner testified that he was unsure how much of the $5,000 check constituted interest.

Notably, petitioner did not have a written loan agreement. The loan was based on an oral agreement. Petitioner's mother kept records relating to the loan in a written journal. Those records indicate that petitioner was not held to a strict repayment schedule and that the interest rate fluctuated. Petitioner has failed to satisfy the requirements to deduct interest on an intrafamily loan. Accordingly, the Court sustains respondent's determination on this issue.

E. Accounting Fees

Petitioner claimed $1,750 in fees he allegedly paid to his mother for accounting services, tax preparation, and representation, on his 2000 Form 1040 Schedule C. Respondent disallowed the entire deduction. The only substantiation petitioner offered was an invoice from his mother's business that

indicated petitioner paid $500 for her services.  The invoice specifically referenced payment by check No. 6718, which apparently never cleared petitioner's bank account.  Petitioner has failed to substantiate his claimed accounting, tax preparation, and representation fees.  Accordingly, the Court sustains respondent on this issue.  Petitioner is not entitled to a deduction for accounting fees.

F. Cost of Goods Sold

"The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross income."  Sec. 1.162-1(a), Income Tax Regs.  A taxpayer may also deduct the cost of supplies and materials consumed in the operation of his or her business during the taxable year.  See sec. 1.162-3, Income Tax Regs.

Petitioner claimed on Schedule C $3,323 for CGS.  Respondent disallowed $659 of petitioner's CGS.  Petitioner asserted that he purchased the items constituting his CGS for use in his sales activity for TIG and then provided substantiation for $58.50 in computer software.[20]  The remaining items listed as his CGS were allegedly used in his computer assembly and consulting business, Computer Consulting Forum Company.  Petitioner claimed to have

---

[20]Petitioner contended that he purchased a Palm Pilot which he "used for appointments" that were "related to * * * [his] business."  Petitioner further testified that the Palm Pilot "actually got run over by a car and flattened.  So it was a total loss that year."

assembled and sold some computers at cost during the 2000 taxable year, although he failed to provide substantiation. Notably, petitioner's 2000 Federal tax return did not report any gross receipts from the alleged sales.

The regulations promulgated under section 162 clearly provide that CGS is deductible from "gross sales". Petitioner did not report any "gross sales" from his computer assembly business. Petitioner failed to substantiate the cost of materials and supplies allegedly used in his computer assembly business. Further, petitioner's testimony established that he purchased items he believed were CGS, such as the Palm Pilot, for use, not for resale. Petitioner has failed to substantiate the CGS disallowed by respondent. Accordingly, the Court sustains respondent on this issue. Petitioner is entitled to $2,664 in CGS for taxable year 2000.

G. Legal Fees

Generally, legal fees are deductible on a Schedule C only if the matter with respect to which the fees were incurred originated in the taxpayer's trade or business and only if the claim is sufficiently connected to that business. Test v. Commissioner, T.C. Memo. 2000-362 (citing United States v. Gilmore, 372 U.S. 39 (1963)), affd. 49 Fed. Appx. 96 (9th Cir. 2002). Expenses not incurred in a trade or business activity but in the production or collection of income are deductible only as

miscellaneous itemized deductions on Schedule A.  See secs. 67(b), 212(l); <u>Test v. Commissioner</u>, <u>supra</u>.  It is well established that even though a taxpayer's employee status may be regarded as a trade or business, legal fees stemming from a taxpayer's employee status are not deductible in computing adjusted gross income but are to be treated as miscellaneous itemized deductions.  <u>Test v. Commissioner</u>, <u>supra</u>.

The case <u>Smyth v. Daou Systems, Inc.</u>, No. 97-CV-02013 (S.D. Cal. filed Nov. 7, 1997), is related to petitioner's former employment with Daou Systems.  As a result of the litigation, petitioner recovered a total of $8,000 from Daou Systems (which was subject to withholding).  The net amount of $5,918.82 was actually paid to petitioner's attorney, Mr. Conger, who deducted his legal fees of $1,689.65 and paid the remainder to petitioner. The Court concludes that petitioner is entitled to deduct $1,689.65 as a miscellaneous itemized expense on Schedule A, subject to the overall 2-percent of adjusted gross income limitation.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing and concessions by both parties,

Decision will be entered

under Rule 155.